United States District Court
Southern District of Texas
**ENTERED**
March 07, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDSEY K.,[1] | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:22-cv-04383 |
| MARTIN O'MALLEY,[2] Commissioner of Social Security, | § § § § | |
| *Defendant.* | § § | |

# MEMORANDUM AND ORDER

Plaintiff Lindsey K. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g).[3] Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff filed a motion for summary judgment, ECF No. 10, and the Commissioner filed a response and cross-motion for

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The Court substitutes in the name of the current Commissioner as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[3] On March 23, 2023, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 8.

1

summary judgment, ECF No. 17. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that the Administrative Law Judge's ("ALJ") decision "is not supported by substantial evidence and is the result of legal errors." ECF No. 10 at 3, 17. The Commissioner counters that "the ALJ followed the correct legal standards," and substantial evidence supports the ALJ's decision. ECF No. 17 at 18. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ properly considered the medical evidence, and Plaintiff has failed to identify any errors. Plaintiff's motion for summary judgment is thus denied, and the Commissioner's cross-motion is granted.

**I.     BACKGROUND**

Plaintiff was 32 years old on her alleged disability onset date, and she has a high-school education and two years of college attendance. R. 144-45, 226.[4] Plaintiff previously worked as a department manager, a commercial cleaner, a security guard, and in several other semi-skilled positions. R. 144, 226. Plaintiff alleges a disability onset date of May 15, 2017. R. 201. Plaintiff claims to suffer from various medical conditions caused by her brain tumor. R. 225.

On July 13, 2020, Plaintiff filed her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. 201-14. Plaintiff based her application on a brain tumor causing daily migraines,

---

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 5.

2

insomnia, nausea, weight gain, and other symptoms. R. 225. Plaintiff later reported depression and anxiety. R. 267. The Commissioner denied Plaintiff's claim initially, R. 56-72, and on reconsideration. R. 90-108.

On February 16, 2022, an administrative hearing was held before an ALJ, where Plaintiff was represented by an attorney. R. 29-52. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 33, 45. The ALJ issued a decision finding that Plaintiff had the residual functional capacity ("RFC") to perform light work with some moderate restrictions.[5] R. 133-46. The ALJ thus found Plaintiff not disabled and denied her request for benefits. R. 146. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1-6.

Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step five. R. 146. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date. R. 135 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: status post treatment for brain tumor/mass causing migraine headaches, depression, anxiety, and obesity. R. 136 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 137 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except with some postural and environmental restrictions, such as no climbing ladders or working around hazardous machinery, and she should be limited to simple three-step tasks, occasional interaction with others, no fast-paced production, and only gradual changes in work duties. R. 139. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. R. 144 (citing 20 C.F.R. §§ 404.1565, 416.965). And at step five, the ALJ found the Plaintiff would be able to perform a variety of light or sedentary unskilled jobs that exist in significant numbers in the national economy, including router, final assembler, and document preparer. R. 145 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 146.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*,

4

787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009) (quotation omitted).

### III. APPLICABLE LAW

#### A. Disability Insurance Benefits and Supplemental Security Income Under the Act.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C.

§ 423(a)(1)(D). These payments are referred to as disability insurance benefits. The Act also permits Supplemental Security Income ("SSI") payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Although these programs are distinct, applicants must prove "disability" under both sections. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); *id.* § 1382c(a)(3)(A) (SSI). Both sections define disability using virtually the same language. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (using "unable" rather than "inability"). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)). "The law and regulations governing the determination of disability are the same for both programs." *Roberts v. Colvin*, 946

F. Supp. 2d 646, 657 (S.D. Tex. 2013) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

### B. The Shifting Burden of Proof.

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). SSI benefits are dependent on proof of disability and indigence, and a claimant can receive SSI payments once he applies to the program, no matter how long he has been disabled. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014) (citing 42 U.S.C. §§ 1382a, c(a)(3); *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); and 20 C.F.R. § 416.335).

The Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.   ANALYSIS

Plaintiff raises two broad issues: (1) the ALJ erred at step three by finding that Plaintiff did not meet the requirements of a listed impairment, and (2) the ALJ improperly determined Plaintiff's RFC. ECF No. 10 at 1. Plaintiff specifically argues that the ALJ failed to consider Listing 11.02 for epilepsy, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02, which she contends is the equivalent to migraine disorders. ECF No. 10 at 4-6. Plaintiff also argues the ALJ erred by failing to adequately consider her 2020 consultative psychological examination. *Id.* at 7-10. Plaintiff's remaining arguments are largely disorganized and unsupported by citation to the record or any legal analysis. *Id.* at 11-17. To the extent Plaintiff has not waived these arguments for inadequate briefing, the Court construes the motion as challenging whether the ALJ's RFC determination is supported by substantial evidence. The Commissioner responds, with ample citation to the 3,166-page record, that the ALJ's conclusions are supported by substantial evidence, and that Plaintiff has failed to show any prejudice from any of the alleged errors. ECF No. 17 at 4-17. For the reasons stated below, the Court agrees with the Commissioner's analysis.

### A.   The ALJ Did Not Err by Failing to Consider Plaintiff's Migraines Under the Listing for Epilepsy at Step Three.

Plaintiff argues the ALJ erred at step three of the five-step analysis by failing to consider whether her migraines met the listing for epilepsy. Plaintiff bears the burden of proof at step three. *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016).

8

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). But "an issue not raised during the administrative review process will generally be considered to be waived." 4 SOC. SEC. LAW & PRAC. § 55:59, Westlaw (last updated Dec. 2023); *cf. Dickerson v. Comm'r of Soc. Sec.*, No. 4:18-CV-4578, 2019 WL 7938518, at *7 (S.D. Tex. Dec. 9, 2019), *report and recommendation adopted*, 2020 WL 730877 (S.D. Tex. Feb. 12, 2020) (finding Appointments Clause claim waived for failure to raise at administrative level).

Plaintiff argues that she "meets or equals Listing 11.02" for epilepsy, even though she "does not suffer from epilepsy." ECF No. 10 at 4. Plaintiff nonetheless insists without explanation the ALJ erred by not considering her "severe migraine headaches under their claimed listing, 11.02." *Id.* But nowhere in the record does Listing 11.02 appear as an alleged impairment. Plaintiff argued before the ALJ "that she meets or equals Listing 11.05 and additionally 12.04 and 12.06."[6] R. 32; *see also* R. 299 (arguing Plaintiff "meets or equals the severity contemplated by Listing[s] § 11.05, 12.04, and 12.06."). Listing 11.02 was only mentioned in passing before the Appeals Council. R. 352. Plaintiff now argues failure to consider Listing 11.02 for

---

[6] Listing 11.05 refers to benign brain tumors, while Listings 12.04 and 12.06 are for depressive disorders and anxiety disorders, respectively. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 11.05, 12.04, 12.06.

the first time. But the Court is unpersuaded that the ALJ commits error by failing to consider a listing Plaintiff never raised. This argument has been waived.

Moreover, Plaintiff's argument misunderstands the law. Plaintiff asserts, without citation, that "migraine headaches are considered under the listing 11.02 for epilepsy." ECF No. 10 at 4. Plaintiff is at least partly correct that "Epilepsy (listing 11.02) is the most closely analogous listed impairment for [a medically determinable impairment] of a primary headache disorder." SSR 19-4p, 2019 WL 4169635, *7 (Aug. 26, 2019). But that is only true for a *primary* headache disorder. The SSR offers this simple definition: "Primary headaches occur independently and are not caused by another medical condition. Secondary headaches are symptoms of another medical condition such as fever, infection, high blood pressure, stroke, or *tumors*." *Id.* at *3 (emphasis added). Secondary headaches may not be established as a medically determinable impairment at step three "because secondary headaches are symptoms of another underlying medical condition," and "successful treatment of the underlying condition will alleviate the secondary headaches." *Id.* at *6.

Plaintiff's migraines are allegedly caused by her brain tumor. R. 32. Plaintiff even testified that was unable to work due to "debilitating pain from the tumor, causing the migraines" and other symptoms. R. 34. Based on that testimony and the medical evidence, the ALJ found a severe impairment of "brain tumor/mass causing migraine headaches." R. 136. Plaintiff does not disagree with the ALJ's finding that

10

Plaintiff suffers severe "migraines from brain tumor residuals." ECF No. 10 at 3. In other words, Plaintiff does not have a primary headache disorder—at most, Plaintiff has secondary headaches, which cannot be a medically determinable impairment under SSR 19-4p. Therefore, the ALJ could not have erred by failing to consider Listing 11.02, which is only relevant to a primary headache disorder.

Furthermore, the ALJ fully considered the effects of Plaintiff's secondary headaches. The ALJ discussed Plaintiff's testimony about her migraines and the relevant medical evidence at length. R. 140-43. But as the ALJ noted, the record shows that Plaintiff's headaches were alleviated with medication, and she was no longer reporting migraines in March of 2021. R. 143, 1162-64. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Most of the evidence Plaintiff cites in support is from 2017, and Plaintiff cites no evidence of migraines after December of 2019. ECF No. 10 at 5-6. Even assuming Listing 11.02 applied in this situation, Plaintiff has not met her burden. The ALJ thus committed no error by failing to consider Plaintiff's migraines under Listing 11.02.

> **B.** **The Consultative Psychological Examination Is Consistent with the ALJ's Finding of No Marked Impairments.**

Plaintiff asserts another step-three error, this time under Listings 12.04 for depressive disorder and 12.06 for anxiety disorder. Once again, Plaintiff bears the burden of showing that her impairment "meet[s] *all* of the specified medical

11

criteria." *Whitehead*, 820 F.3d at 781. A mental impairment is generally considered medically equal to a listing where there is extreme limitation in one, or marked limitation in two, of the four areas of mental functioning. *Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865, at *2 (5th Cir. July 12, 2023) (summarizing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d)-(e)). The four areas of mental functioning, also known as "Paragraph B" criteria, are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(E)(1)-(4), 12.04(B)(1)-(4), 12.06(B)(1)-(4).

    Plaintiff restates the criteria for Listing 12.06 while insisting the "conclusions and statements by the ALJ are blatantly false." ECF No. 10 at 7-8. Plaintiff argues the ALJ should have found "marked" limitations in the first and second Paragraph B criteria for understanding and interacting with others. *Id.* at 8. But Plaintiff fails to identify any controlling case law or support her assertions with evidence. Aside from a vague citation to the "Hearing Transcript," purportedly indicating testimony that Plaintiff "often keeps to herself," *id.*, the only other citation to evidence in the record is the consultative examination by Dr. Lowell Adams. R. 1115-21.

    Dr. Adams performed a video interview with Plaintiff on December 10, 2020, but was not provided with any medical records to review. R. 1116. Based on their interactions, Dr. Adams assessed that Plaintiff had "average intelligence with

adequately develop[ed] social skills," and "no signifficant [*sic*] medical concerns." R. 1116-17. Plaintiff reported to Dr. Adams that her ability to multitask or timely complete routine tasks was "a concern" due to her anxiety and inattention, although her "psychiatric symptoms have shown significant improvement" since beginning treatment. R. 1117-18. Plaintiff reported several episodes of depression, anxiety, and behavioral issues, at a rate of 1-4 times per month. R. 1119. Dr. Adams noted only "occasional difficulties relating to co-workers and supervisors" in the past, whereas Plaintiff occasionally socialized with friends and family outside the home. R. 1118, 1120. Based on testing conducted during the interview, Dr. Adams concluded that Plaintiff's "ability to recall and use working memory to perform work activities appeared to be intact," and her long-term memory was "in the low average range." R. 1119-20. Plaintiff's concentration skills were also "intact," and her capacity to follow multistep instructions was "slightly below average." R. 1120.

    Contrary to Plaintiff's assertions, the ALJ fully considered the consultative examination. R. 143. The ALJ noted that Plaintiff's memory-related functioning was at most "slightly below average," and she only had "occasional difficulties relating to co-workers and supervisors." *Id.* This summary fully comports with Dr. Adams's functional capacity assessment in the record, finding relatively minor limitations. R. 1119-20. Observing that "Dr. Adams does not clearly specify any functional limitations the claimant may have due to her mental impairments," the ALJ further

13

found the evaluation "consistent with the overall medical record which supports the determined [RFC] assessment." R. 143. In other words, the ALJ did not reject Dr. Adams's consultative examination—the ALJ found that it supported the conclusion of at most moderate limitations in each area of functioning. Plaintiff fails to explain how the consultative examination supports more than moderate limitations for any Paragraph B criteria. The Court thus finds the ALJ committed no error at step three.

### C. The RFC Determination Is Supported by Substantial Evidence, and the ALJ Committed No Error.

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence. The ALJ found Plaintiff could perform light work, with postural and environmental limitations, and limited Plaintiff to "simple, routine, repetitive tasks" and "occasional interaction with the public, co-workers and supervisors." R. 139. That RFC is then supported by several pages summarizing the medical opinions and evidence in the record. R. 139-44. Plaintiff contends the ALJ's "determination is simply conclusory and does not contain any true rationale or reference to the supporting evidence." ECF No. 10 at 11. But Plaintiff does not point to anything in the 3,166-page record the ALJ allegedly failed to consider. Nor does Plaintiff explain what additional evidence of disability would have been uncovered had the ALJ further developed the record by ordering additional consultative examinations.

Plaintiff's argument at its core is that she disagrees with the ALJ's conclusion.

But that is irrelevant. The Court cannot reweigh the evidence or try the issues *de novo*. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Even if the Court does not agree with the results, the Court must accept the ALJ's decision if it is supported by substantial evidence. *Jones v. Saul*, 834 Fed. App'x 839, 840 (5th Cir. 2020). And the bar for substantial evidence "is not high." *Biestek*, 139 S. Ct. at 1154.

In response, the Commissioner painstakingly combs through the record to find the supporting evidence cited in the ALJ's decision. The Commissioner notes that Plaintiff began radiation therapy shortly after the discovery of her brain tumor, and by November of 2017 her symptoms were "medically managed." ECF No. 17 at 5-6; R. 141, 645, 648, 694. Although Plaintiff subsequently suffered from "occasional headaches" in 2018, medication improved her symptoms. ECF No. 17 at 6; R. 142, 987. Plaintiff later complained of "extreme migraines" in June of 2019, but by September she had "no complaints." ECF No. 17 at 7; R. 142, 1069-78. In 2021, Plaintiff's brain tumor was stable, and aside from headaches and sleep disturbance, she denied having any other major symptoms. ECF No. 17 at 10; R. 143, 1480-87, 1520. The ALJ cited and reviewed this same medical evidence. R. 141-43. This evidence amply supports the ALJ's RFC assessment of light work with restrictions.

The ALJ also reviewed the state agency psychological consultants' initial and reconsideration opinions. R. 144, 56-72, 90-108. Based on the medical evidence available as of December 29, 2020, and then as of April 13, 2021, the consultants

concluded that Plaintiff had at most moderate limitations in two of the four areas of functioning. R. 62, 97. The ALJ found the opinions only partly persuasive and assessed greater limitations, based on more recent evidence. R. 144. And as noted above, the ALJ reviewed Dr. Adams's consultative examination, which supported the addition of only moderate environmental restrictions in the ALJ's RFC. R. 143, 1119-20. These medical opinions, each properly considered by the ALJ, provide substantial evidence in support of the ALJ's ultimate RFC determination.

Plaintiff nonetheless contends the ALJ here decided to "play doctor" by "substituting his own opinion for those of medical professionals." ECF No. 10 at 14-15. But the Fifth Circuit has explained that this is *precisely* what an ALJ is supposed to do: "What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [her] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Indeed, using medical records claimant provided to determine the RFC "is the sole responsibility of the ALJ." *Id.* at 602-03. The ALJ's responsibility is not to merely "adopt a specific physician's assessment," but instead "to interpret the medical evidence to determine a claimant's capacity for work." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (cleaned up). That is exactly what the ALJ did here. The ALJ properly reviewed and summarized Plaintiff's hearing testimony as well as her medical records from 2017 through the end of 2021. R. 140-43. The ALJ was

16

not required to call medical experts to testify, ECF No. 10 at 13, and Plaintiff cites no authority for this or many of her other arguments. The Court finds that substantial evidence supports the ALJ's RFC determination.

### D. Plaintiff's Remaining Arguments Are Inadequately Briefed.

To the extent Plaintiff cursorily raises other arguments throughout her motion, the Court deems those waived due to inadequate briefing. "A party who inadequately briefs an issue is considered to have abandoned the claim." *Vaught v. Astrue*, 271 Fed. App'x 452, 454 (5th Cir. 2008). Arguments may thus be waived where the party "fail[s] to adequately brief its arguments, and support them with facts, evidence, or applicable authority." *New Cingular Wireless, LLC v. City of Brownsville*, No. 1:19-CV-91, 2019 WL 8499340, at *11 (S.D. Tex. Dec. 20, 2019); *see also Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 Fed. App'x 146, 151 (5th Cir. 2015) (reciting basic briefing standards, including that "a party must ordinarily identify the relevant legal standards and any relevant Fifth Circuit Cases" (quotation omitted)).

Despite Plaintiff's insistence that the ALJ's decision "is simply conclusory and does not contain any true rationale or reference to the supporting evidence," ECF No. 10 at 11, that description applies more forcefully to her motion. Other than the occasional citation to pages of the "ALJ UF Decision," the only evidence cited in support of Plaintiff's substantial evidence argument is a single, nonspecific reference to "Hearing Testimony." *Id.* Plaintiff vaguely contends that her "medical records"

show greater limitations. *See id.* at 16. No citation to the record is provided. But a court "need consider only the cited materials" in a motion for summary judgment. FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to [or motion for] summary judgment." *Nelson v. C.R. Bard, Inc.*, 44 F.4th 277, 286 (5th Cir. 2022) (quotation omitted); *accord Davis v. Berryhill*, No. CV 4:17-00521, 2018 WL 618714, at *2 (S.D. Tex. Jan. 30, 2018). The Court fails to see how Plaintiff can meet her burden, whether as the moving party or the non-moving party, without citing to *any* evidence in the record. The Court will not sift through the 3,166-page record, ECF No. 5, to make Plaintiff's arguments for her.

Moreover, some of Plaintiff's arguments appear to be factually incorrect. For example, Plaintiff argues that she "requested a psychological consultative exam at the hearing," and the ALJ erred by not ordering another consultative exam. ECF No. 10 at 8, 13-14. But absent from this argument is any citation to *where* in the record Plaintiff made such a request. The Court has reviewed the ALJ hearing transcript, R. 29-52, and could find no such request. Plaintiff elsewhere contends she "testified that she left her past work as a registered nurse" due to her brain tumor. ECF No. 10 at 11. But again, nowhere in her hearing testimony does Plaintiff mention working as a registered nurse. Plaintiff never objected to the VE's overview of Plaintiff's work history, which contains nothing close to a nurse. R. 46-47, 226.

Plaintiff is not *pro se*—she is assisted by counsel, and yet none of the handful of citations to the record in her motion reflect the administrative transcript. ECF No. 5. Plaintiff also largely fails to cite Fifth Circuit cases outside the standard of review section.[7] Indeed, it is evident that Plaintiff's motion is little more than a copy-paste of her previous briefs before the ALJ and the Appeals Council. R. 298-301, 347-55. Such deficient briefing is tantamount to waiver of all points of error. The Court has nonetheless considered Plaintiff's waived arguments and finds they are without merit.[8] And even if the ALJ committed error at some point in determining her RFC, Plaintiff never explains how any alleged error was prejudicial. *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an

---

[7] Plaintiff cites only two Fifth Circuit cases in the body of her argument. Plaintiff first cites *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002), for the proposition that the ALJ must consider whether Plaintiff's "constant treatment and therapy" render her "incapable of maintaining substantial gainful activity." ECF No. 10 at 15-16. But Plaintiff provides no citation to the record for this alleged "absenteeism." *Id.* at 16. Plaintiff never testified regarding the frequency of her treatment or therapy sessions. R. 29-52. The second case cited is *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001), for the unremarkable proposition that an ALJ must "take into consideration all of the evidence from treating doctors." ECF No. 10 at 16. Although Plaintiff insists the ALJ failed to do so here, she identifies nothing in the 3,166-page record the ALJ failed to consider that might have changed the outcome. Neither case is accompanied by any substantive legal analysis.

[8] This includes Plaintiff's argument that the ALJ should have called medical experts to testify at the hearing or ordered additional consultative examinations. ECF No. 10 at 13-14. Plaintiff also argues the ALJ failed to make a "function-by-function" assessment under SSR 96-8p. *Id.* at 15-16. "Conclusory statements are not competent evidence" in the context of summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Because Plaintiff cites no record evidence in support of these alleged errors, they are not only waived, but the Court is unable to discern which of Plaintiff's alleged conditions the ALJ purportedly failed to consider.

error."). Absent a showing of prejudice, any error was harmless, and the Court must affirm the ALJ's decision.

## V. CONCLUSION

For those reasons, it is **ORDERED** that Plaintiff's cross-motion for summary judgment, ECF No. 10, is **DENIED**, and the Commissioner's cross-motion for summary judgment, ECF No. 16, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed at Houston, Texas, on March 7, 2024.

*Dena Palermo*

**Dena Hanovice Palermo**
**United States Magistrate Judge**